**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| **STEVINS SPURGEON, as special administrator for the estate of Ralph Spurgeon, deceased;**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**CAPITAL SENIOR LIVING, INC. d/b/a CROWN POINTE ASSISTED LIVING, KATIE FESTER, Administrator; JOHN DOE, and JANE DOE,**<br><br>**Defendants.** | **8:19CV508**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on the Findings and Recommendation of Magistrate Judge Susan M. Bazis, ECF No. 7, and the Objection, ECF No. 8, filed by Defendant Capital Senior Living, Inc., d/b/a Crown Pointe Assisted Living (Crown Pointe). For the reasons stated below, the Objection will be overruled; the Findings and Recommendation will be adopted; and the Motion to Remand, ECF No. 4, filed by Plaintiff Stevins Spurgeon (Stevins) will be granted.

## BACKGROUND[1]

Crown Pointe is a facility that provides residential assisted living for senior adults and memory care for those suffering from Alzheimer's and/or Dementia. The memory care area purports to provide twenty-four-hour care and supervision. Ralph Spurgeon (Ralph) was a resident in the memory care unit at Crown Pointe from approximately July 24, 2018, until January 20, 2019. Defendant Katie Fester is employed as the

---

[1] The facts contained in the background section are a summary of those alleged in the Complaint, ECF No. 1-1.

Administrator at Crown Pointe. Defendants John and Jane Doe were nurses hired by Crown Pointe to provide care to residents in the Memory Care area.

In November 2018, Ralph's son, Stanley Spurgeon (Stanley), arrived to pick up Ralph and noticed he had a gash on his head. Crown Pointe agents told Stanley they found Ralph on the floor but could not report what had happened. Ralph was taken to Bellevue Medical. On December 5, 2018, Stevins visited Ralph and had to ask a nurse to unlock Ralph's door. Stevins found Ralph standing in a winter coat and wearing an adult diaper. The odor of urine in the room was so intense that it burned Stevins's eyes. Stevins took Ralph's bedding to the laundry room, and had difficulty getting clean bedding for Ralph. In late December, after repeated requests to have Ralph's room cleaned, Stevins and Ralph returned to Crown Pointe to find a feces-infested sofa made up for Ralph to sleep on.

In January 2019, Ralph injured his ankle. Crown Pointe staff refused to provide Ralph with a wheelchair or ice. Two days later, Stevins and his wife, Karen, arrived to remove Ralph because they didn't believe he was receiving proper care. They found Ralph sitting on a couch with dried feces on his pants and the couch, and vomit on his clothing. Stevins called 911 and Ralph was transported to Bellevue Medical. After a period of home care and readmission to Bellevue Medical, Ralph was transferred to a nursing home where he resided until his death in May 2019. Although the immediate or direct cause of Ralph's death was reported to be senile degeneration of the brain, Stevins alleges Defendants' negligence caused Ralph's injuries and ultimately his death.

On October 17, 2019, Stevins filed a Complaint in the District Court of Douglas County, Nebraska. Defendants removed this case to federal court on November 20, 2019,

asserting diversity jurisdiction. On November 27, 2019, Stevins filed a Motion asking the Court to remand this action to state court pursuant to 28 U.S.C. § 1447(c). In his Motion, Stevins contends this Court lacks subject matter jurisdiction, and consequently must remand the action to state court, because Fester is a party to this action and her presence destroys complete diversity. On January 13, 2020, Magistrate Judge Susan M. Bazis recommended this matter be remanded to the District Court of Douglas County. On January 27, 2020, Crown Pointe filed an Objection.

## STANDARD OF REVIEW

In addition to the amount-in-controversy requirement, subject-matter jurisdiction based on diversity of citizenship requires each defendant to be a citizen of a state different from each plaintiff. 28 U.S.C. § 1332(a). "In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(b). If a case is removed with facially non-diverse parties, the removing party "may avoid remand . . . by demonstrating that the non-diverse party was fraudulently joined." *Filla v. Norfolk Southern Ry. Co.*, 336 F.3d 806, 809 (8th Cir. 2003) (citing *Wiles v. Capitol Indemnity Corp.*, 280 F.3d 868, 871 (8th Cir. 2002)). The district court can temporarily assume jurisdiction to determine if there is fraudulent joinder. *Wivell v. Wells Fargo Bank*, 773 F.3d 887, 896 (8th Cir. 2014) (citing *Murphy v. Aurora Loan Servs., LLC*, 699 F.3d 1027, 1031 (8th Cir. 2012)). "The burden of establishing that a cause of action lies within the limited jurisdiction of the federal courts is on the party asserting jurisdiction." *Arkansas Blue Cross & Blue Shield of Little Rock Cardiology Clinic, P.A.*, 551 F.3d 812, 816 (8th Cir. 2009). Based on the declarations in the notice of removal, Stevins and Fester are not

citizens of different states; thus, the Court must determine whether Fester was fraudulently joined.

"[A] party has been fraudulently joined only if there is no reasonable basis in fact and law for the claim brought against it." *Good Shepherd Assisted Living Corp. v. Great Am. Ins. Co. of New York,* No. 4:14-CV-3241, 2015 WL 2449161, at *1 (D. Neb. May 21, 2015) (citing *Wivell*, 773 F.3d at 893). Joinder may be fraudulent "[w]here applicable state precedent precludes the existence of a cause of action against a defendant." *Wivell*, 773 F.3d at 893 (citing *Filla*, 336 F.3d at 810). Joinder is not fraudulent when a plaintiff "'might' have a 'colorable' claim under state law against a fellow resident." *Wilkinson v. Shackelford*, 478 F.3d 957, 964 (8th Cir. 2007) (quoting *Menz v. New Holland North Am., Inc.*, 440 F.3d 1002, 1005 (8th Cir. 2006)). The standard for proving fraudulent joinder is whether "there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved." *Block v. Toyota Motor Corp.*, 665 F.3d 944, 948 (8th Cir. 2011) (citation omitted). "All doubts about federal jurisdiction should be resolved in favor of remand to state court." *Id.* The Court need not definitively settle an unresolved question of state law, the Court need only determine if there is at least a reasonable basis for finding liability. *Good Shepherd Assisted Living*, 2015 WL 2449161, at *1 (citing *Filla*, 336 F.3d at 811). "[A]ll doubts arising from defective, ambiguous and in artful pleadings [in a removed case] should be resolved in favor of the retention of state court jurisdiction." *Kuehl v. Jefferson Pilot Fin.*, No. 8:12CV260, 2012 WL 5463907, at *3 (D. Neb. Nov. 8, 2012), report and recommendation adopted, No. 8:12CV260, 2012 WL 5960194 (D. Neb. Nov. 28, 2012) (quoting *Wilkinson*, 478 F.3d at 964).

**DISCUSSION**

Crown Pointe argues that principles of agency preclude Stevins's claim against Fester. Crown Point's argument is based on the proposition that "[w]hen a party contracts with a known agent acting within the scope of his or her authority for a disclosed principal . . . the agent cannot be held personally liable thereon" unless the agent has otherwise bound himself or herself, to performance of the contract. *Estate of Schekall v. Randy Bauer Ins. Agency, Inc.*, 749 N.W.2d 478, 483 (Neb. 2008) (citations omitted). However, an agent who does an act that is otherwise a tort is not relieved from liability by the fact that he or she acted under the scope of his or her employment for a principal. Restatement (Third) of Agency § 7.01 (2006); *Dieter v. Hand*, 333 N.W.2d 772, 774 (Neb. 1983) ("An employee of a corporation whose negligence causes injury is jointly and severally liable, with the corporation, in an action for damages caused by such injuries."). Thus, the Court will consider whether Crown Pointe has met its burden of demonstrating that there is no reasonable basis under Nebraska law for finding Fester liable in tort.

In *A.W. v. Lancaster Cty. Sch. Dist. 0001*, 784 N.W.2d 907, 917 (Neb. 2010), the Nebraska Supreme Court adopted § 7 of the Restatement (Third) of Torts (2012). Section 7 states "An actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm." Thus, "[t]he conduct that creates the risk must be some affirmative act, even though the negligence might be characterized as a failure to act." Restatement (Third) of Torts § 6 cmt. f. "An actor whose conduct has not created a risk of physical or emotional harm to another has no duty of care to the other unless a court determines that one of the affirmative duties provided in §§ 38-44 is applicable." *Bell v. Grow With Me Childcare & Preschool LLC*, 907 N.W.2d 705, 715 (Neb. 2018) (citing Restatement (Third) of Torts § 37). "Generally speaking, these affirmative duties

arise from special relationships that courts have determined justify the imposition of an affirmative duty to act." *Id.* at 715-16 (citation omitted).

The Restatement identifies several special relationships but cautions that the list is not exclusive; courts may decide to recognize other areas for affirmative duties under § 37. *Id.* at 716 (citing Restatement (Third) of Torts § 40-42). The Restatement (Third) recognizes an affirmative duty when the actor has a special relationship with the plaintiff, § 40, or when the actor has a special relationship with a person who poses a risk to the plaintiff, § 41. *Bell*, 907 N.W.2d at 715. "The custodial relationships that courts have recognized as imposing an affirmative duty include . . . nursing homes with their residents." Restatement (Third) of Torts § 40 cmt. n.

In *Rodriguez v. Catholic Health Initiatives*, 899 N.W.2d 227, 230-31 (Neb. 2017), the Nebraska Supreme Court held that employees of a mental health facility (Lasting Hope) owed a duty to a third party based on a special custodial relationship with the patient (Loyd). In *Rodriguez*, the special administrator of a murder victim's estate brought an action against multiple parties, including Lasting Hope and its employees ("the Lasting Hope defendants"). 899 N.W.2d at 230-31. The plaintiff alleged the defendants were negligent in various respects and specifically in failing to protect the victim from Loyd who murdered her after he left the facility "on his own, without supervision, [without] being questioned or stopped, and without Lasting Hope even noticing he was gone." *Id.* at 231-32. Rodriguez also claimed the defendants were negligent for failing to provide Loyd adequate mental health treatment. *Id.* at 232. The district court dismissed the action against the Lasting Hope defendants after determining they did not owe a duty to the victim, and the Nebraska Supreme Court reversed, finding merit in plaintiff's argument

that "due to their custodial relationship with Loyd, the Lasting Hope defendants owed a common law duty of care to protect [the victim] from Loyd." *Id.* at 234. Specifically, the Nebraska Supreme Court stated that

> Lasting Hope had Loyd in its custody, and applying § 41(b)[2] of 2 Restatement (Third) of Torts: Liability for Physical and Emotional Harm (2012), . . . the Lasting Hope defendants therefore owed a duty of reasonable care to third parties, including [the victim], with regard to risks posed by Loyd, consistent with the nature and extent of custody exhibited by Lasting Hope.

*Id.* at 237.

Assisted living facility administrators are "responsible for the overall operation of the facility" and "responsible for planning, organizing, and directing the day to day operations of the assisted-living facility." 175 NEB. ADMIN. CODE § 4-006.02 (2007). According to Stevins, "Fester voluntarily undertook the duty to protect each patient's health, safety, and well-being and to supervise medical staff to ensure proper patient care . . . ." Complaint, ECF No. 1-1, Page ID 11. Stevins also alleges that Defendants "knew and/or had reason to know that Crown Pointe Assisted Living residents were not receiving the proper care and/or treatment, resulting in [Ralph's] injuries." *Id.* at 12. Specifically, Stevins alleges Defendants permitted Ralph to live and sleep in his own feces, refused to maintain hygiene supplies for residents such as Ralph, and permitted Ralph to live in an environment conducive to accidents. *Id.* at 8. Stevins also alleges Defendants breached their duties to Ralph by "[f]ailing to properly supervise John Doe and Jane Doe, and/or other agents of [Crown Pointe] and to provide proper oversight for John Doe and Jane Doe and/or other agents of [Crown Pointe] in its provision of proper resident care and

---

[2] Section 41 addresses the duty to third parties based on special relationships with a person posing risks and 41(b) states that "Special relationships giving rise to the duty provided in Subsection (a) include . . . a custodian with those in its custody . . . ."

necessary living conditions" and "failing to train staff . . . to ensure living conditions suitable to the residents." *Id.* at 13-15.

The Court has not found any reported Nebraska cases, nor have the parties cited to any, that address whether an assisted living facility administrator owes its residents a duty of care. However, federal district courts have remanded a number of negligence cases where a nursing home administrator was alleged to have been fraudulently joined. *See Williams v. Camden II Operations, LLC*, No. 1:18-CV-1028, 2018 WL 3993398, at *6 (W.D. Ark. Aug. 21, 2018) ("a nursing home administrator may be liable to a nursing home resident on a cause of action based on deficient care if the administrator was personally involved in the events surrounding the resident's injury"); *Smoyer v. Care One, LLC*, No. 2:16-CV-1696, 2017 WL 575070, at *8 (W.D. Pa. Jan. 23, 2017), report and recommendation adopted, No. 2:16-CV-1696, 2017 WL 573573 (W.D. Pa. Feb. 13, 2017) ("it is possible that a court would find that . . . the nursing home administrator, owed a legal duty of care to the decedent"); *Lindsey ex rel. Estate of DeVane v. Kentucky Med. Inv'rs, Ltd.*, No. CIV.A.05-116, 2005 WL 2281607, at *5 (E.D. Ky. Sept. 19, 2005) ("the [state appellate court] decision creates, at the very least, potential liability on behalf of nursing homes, as well as their administrators and other personnel, for injuries sustained by residents under their care"); *but see Johnson v. Trinity Mission Health & Rehab of Clinton*, LLC, No. 3:15-CV-238, 2015 WL 4506898, at *3 (S.D. Miss. July 24, 2015) (finding fraudulent joinder where there were no allegations the individual directed, authorized, or had any personal involvement in the specific treatment of and/or any other specific actions involving the resident); *Howard v. Estate of Harper ex rel. Harper*, 947 So. 2d 854, 862 (Miss. 2006) ("no common law duty is owed by a nursing home's licensee

or administrator to that nursing home's patients"). Based on the allegations contained in the Complaint, the Nebraska Supreme Court's decision in *Rodriguez,* and its adoption of the Restatement (Third) of Torts, there is a reasonable basis for predicting that state law may impose liability on Fester. Accordingly, the Court will overrule Crown Pointe's objection, adopt the Magistrate Judge's Findings and Recommendation, and grant Stevins's Motion to Remand.

Accordingly,

IT IS ORDERED:

1. The Objection, ECF No. 8, filed by Defendant Capital Senior Living, Inc., is overruled;

2. The Magistrate Judge's Findings and Recommendation, ECF No. 7, are adopted in their entirety;

3. The Motion to Remand, ECF No. 4, filed by Plaintiff Stevins Spurgeon, is granted; and

4. This action is remanded to the District Court of Douglas County, Nebraska.

Dated this 4th day of March, 2020.

BY THE COURT:

s/Laurie Smith Camp
Senior United States District Judge